IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN MARSHALL TOMPKINS,<br><br>    Plaintiff,<br><br>vs.<br><br>STEPHENS, et al.,<br><br>    Defendants.<br>_____/ | No. CIV S-07-2346 GEB EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

    Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. This action proceeds on the May 7, 2010 amended verified complaint in which plaintiff claims that defendants Stephens, Miranda and Alziebler violated his Eighth Amendment rights.

    The matter is now before the court on defendants' motion for summary judgment. Defendants claim that plaintiff failed to exhaust his administrative remedies prior to filing this action; that there is no triable issue of material fact with respect to plaintiff's factual allegations; and that they are entitled to qualified immunity. Dckt. No. 78-1 at 2. For the reasons explained below, defendants' motion for summary judgment must be denied.

////

////

## I. Factual Allegations

Plaintiff alleges that on October 15, 2006, he was placed in a cell on "suicide precaution" after he was over medicated by medical personnel after being returned from an outside hospital. Dckt. No. 46 at 1-2. He was incoherent and unresponsive. *Id.* at 2. Defendant Miranda was supposed to wake him every 15 minutes, which she failed to do. *Id.* Miranda asked defendant Stephens to "rouse" plaintiff. *Id.* Stephens asked Miranda if plaintiff had been given any medication and if the medication he had been given could cause harm to him and she answered yes to both questions. *Id.* Stephens then summoned defendant Alziebler for assistance. *Id.* Plaintiff was incoherent and unresponsive. *Id.* Plaintiff alleges that he was then assaulted and battered with pepper spray, causing great bodily injury. *Id.* He was then placed in a shower without being properly decontaminated and then was placed back in the same cell without it being properly decontaminated. *Id.* He alleges that there was no legitimate penological justification for defendants' actions. *Id.*

With respect to exhaustion, plaintiff alleges in his complaint that he exhausted the claims in his complaint through the prison grievance system. He admits that his internal appeal was screened out at the director's level of review as untimely after this lawsuit was filed.

## II. Exhaustion

Defendants previously moved to dismiss this action on the grounds that plaintiff had failed to exhaust his administrative remedies. *See* Dckt. No. 13. The undersigned recommended that the motion to dismiss be denied because defendants had not met their burden of proving that plaintiff's failure to exhaust was not excused. *See* Dckt. No. 36 at 10. Defendants filed objections to the findings and recommendations, asking that the court conduct an evidentiary hearing on the factual dispute regarding exhaustion, or in the alternative, deny defendants' motion without prejudice to renewal of the exhaustion argument in a motion for summary judgment. Dckt. No. 39 at 2. The assigned district judge adopted the undersigned's findings and recommendations and denied the motion to dismiss without prejudice to renewal in a motion for

summary judgment. Dckt. No. 40. Subsequently, defendants filed the instant motion.

**A.      Summary Judgment Standard**[1]

As the court previously explained in addressing defendants' earlier motion to dismiss on exhaustion grounds, *see* Dckt. No. 36 at 4, where resolution of the exhaustion issue require the presentation of evidence outside the pleadings, the issue must be addressed under standards that apply the procedural safeguards of Rule 56, to determine whether disputed issues of material fact exist on the question, and if so, that the credibility of conflicting witnesses are resolved through live testimony and not on paper.

Here, the parties dispute whether plaintiff, in fact, exhausted his administrative remedies. Summary judgment on the matter is appropriate when if it is demonstrated that there exists "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "When reasonable minds could differ on the material facts at issue, summary judgment is not appropriate." *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

////

---

[1] On August 28, 2008, the court advised plaintiff of the requirements for opposing a motion to dismiss for failure to exhaust available administrative remedies as well as a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988); *Wyatt,* 315 F.3d at 1120, n.14

3

1      Focus on where the burden of proof lies on the issue in question is crucial to summary
2 judgment procedures. "[W]here the nonmoving party will bear the burden of proof at trial on a
3 dispositive issue, a summary judgment motion may properly be made in reliance solely on the
4 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Celotex Corp. v.*
5 *Catrett*, 477 U.S. 317, 324 (1986). Indeed, summary judgment should be entered, after adequate
6 time for discovery and upon motion, against a party who fails to make a showing sufficient to
7 establish the existence of an element essential to that party's case, and on which that party will
8 bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment
9 should be granted, "so long as whatever is before the district court demonstrates that the standard
10 for entry of summary judgment . . . is satisfied." *Id.* at 323.

11      Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

15 *Id.* (quotations omitted). The opposing party must demonstrate – through evidence in the form
16 of affidavits and/or admissible discovery material – a factual dispute that is both material (i.e., it
17 affects the outcome of the claim under the governing law) and genuine (i.e., the evidence is such
18 that a reasonable jury could return a verdict for the nonmoving party). Fed. R. Civ. P.
19 56(c)(1)(A); *Anderson*, 477 U.S. at 248-50; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
20 475 U.S. 574, 586, n.11 (1986). Alternatively, the opposing party may demonstrate that a
21 material fact is genuinely disputed by "showing that the materials cited [by the moving party] do
22 not establish the absence . . . of a genuine dispute, or that [the moving] party cannot produce
23 admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B); *Matsushita*, 475 U.S. at
24 586. As noted, summary judgment should be entered against a party who fails to make a
25 showing sufficient to establish the existence of an element essential to that party's case, and on
26 which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322. Thus,

4

"a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

In resolving a summary judgment motion, the court examines the pleadings, the discovery and disclosure materials on file, and any affidavits filed by the parties. *See* Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in his or her favor. *Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Nevertheless, it is the opposing party's obligation to produce a factual predicate from which a favorable inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts...Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory and unequivocal. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to *suit*." (citation omitted)). A prisoner seeking leave to proceed *in forma pauperis* in an action challenging the conditions of his confinement brings an action for purposes of 42 U.S.C. § 1997e when he submits his complaint to the court. *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006). Therefore, a prisoner must exhaust available administrative remedies before filing any papers in federal court and is not entitled to a stay of judicial proceedings in order to exhaust. *Id.*

at 1051; *McKinney*, 311 F.3d 1198.

The failure to exhaust nonjudicial administrative remedies as required by § 1997e(a) is not jurisdictional. *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003). Nor does § 1997e(a) require a plaintiff to plead exhaustion. *Id.* at 1119. Rather, "§ 1997e(a) creates a defense – defendants have the burden of raising and proving the absence of exhaustion." *Id.*

California prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a).

> To initiate the process, an inmate must fill out a simple form, Dept. of Corrections, Inmate/Parolee Appeal Form, CDC 602 (12/87) (hereinafter Form 602), that is made "readily available to all inmates." Cal. Code Regs. tit. 15, § 3084.1(c) (2004). The inmate must fill out two parts of the form: part A, which is labeled "Describe Problem," and part B, which is labeled "Action Requested." Then, as explained on Form 602 itself, the prisoner "must first informally seek relief through discussion with the appropriate staff member." [] The staff member fills in part C of Form 602 under the heading "Staff Response" and then returns the form to the inmate.
>
> If the prisoner is dissatisfied with the result of the informal review, or if informal review is waived by the State, the inmate may pursue a three-step review process. *See* Cal. Code Regs. tit. 15, §§ 3084.5(b)-(d). Although California labels this three-step process "formal" review (apparently to distinguish this process from the prior step), the three-step process is relatively simple. At the first level, the prisoner must fill in part D of Form 602, which states: "If you are dissatisfied, explain below." [] The inmate then must submit the form, together with a few other documents, to the Appeals Coordinator within 15 working days-three weeks-of the action taken. *Id*., § 3084.6(c). This level may be bypassed by the Appeals Coordinator in certain circumstances. *Id*., § 3084.5(b). Within 15 work-days after an inmate submits an appeal, the reviewer must inform the inmate of the outcome by completing part E of Form 602 and returning the form to the inmate.
>
> If the prisoner receives an adverse determination at this first level, or if this level is bypassed, the inmate may proceed to the second level of review conducted by the warden. *Id*., §§ 3084.5(c), (e)(1). The inmate does this by filling in part F of Form 602 and submitting the form within fifteen work-days of the prior decision. Within ten working days thereafter, the reviewer provides a decision on a letter that is attached to the form. If the prisoner's claim is again denied or the prisoner otherwise is dissatisfied with the result, the prisoner must explain the basis for his or her dissatisfaction on part H of the form and mail the form to the Director of the California Department of Corrections and Rehabilitation within 15 working days. *Id*., § 3084.5(e)(2). An inmate's appeal may be rejected where "[t]ime limits for submitting the appeal are exceeded and the appellant had the

opportunity to file within the prescribed time constraints." *Id.*, § 3084.3(c)(6). *Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006). Generally, completion of the third level, the Director's Level of Review, exhausts the remedy. Cal. Code Regs. tit. 15, § 3084.1(a). All steps must be completed before a civil rights action is filed, unless a plaintiff demonstrates a step is unavailable to him; exhaustion during the pendency of the litigation will not save an action from dismissal. *McKinney*, 311 F.3d at 1200. The claim must be properly exhausted; therefore, an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the exhaustion requirement. *Woodford*, 548 U.S. at 83-84.

A prisoner's failure to timely exhaust administrative remedies is excused where he took "reasonable and appropriate steps to exhaust," but "was precluded from exhausting," through no fault of his own. *Nunez v. Duncan*, 591 F.3d 1217, 1221-22 (9th Cir. 2010).

Here, plaintiff filed his initial complaint in this case on October 23, 2007. Dckt. No. 1 at 6. His third-level appeal was not filed until four months later, in February 2008. Plaintiff has filed a declaration stating the following. *See* Dckt. No. 84. He was at Mule State Creek Prison when the incidents described in the complaint occurred. *Id.* at 2. He was transferred to Corcoran State Prison in January 2007 for a SHU term. *Id.* He was then transferred back to Mule Creek State Prison for court proceedings in March 2007. *Id.* From January 2007 to May 2008 he was transferred back and forth between these two prisons. *Id.* He "continued his 602s throughout the transfers." *Id.* His 602 was denied at the second level of review in June 2007, but he did not receive the decision until the beginning of September 2007. *Id.* at 2-3. At that time, he sent the 602s to the Corcoran State Prison appeals coordinator to be forwarded to the third level of review. *Id.* at 2. On September 17, 2007, the appeals coordinator sent them back to him, stating that he needed to complete "Section H"–the date of the appeal–in order to proceed to the third level of review. *Id.* Plaintiff added the date and resubmitted his appeals on September 17, 2007. *Id.* Approximately ten days later, he was transferred back to Mule Creek State Prison for court proceedings; he was only allowed to take paperwork relating to his "court case," but nothing

else. *Id.* He read in the California Code of Regulations that if he did not appeal the denial of his internal appeal within 15 working days, his appeal at the next level would be screened out or denied as untimely. *Id.* at 3. Because his 602 had been denied in June, and he had not submitted it to the third level of review until September, he "figured that his 602 appeal [at the third level] would be screened out or denied as untimely." *Id.* at 3.

Because common sense told him that his appeal would be screened out or denied as untimely at the third level of review, he believed that his administrative remedies were exhausted "because of the abused time constraint on the department's behalf." *Id.* at 3. Therefore, he filed this action on October 23, 2007. *Id.* He was told in late October 2007 that he would not be transferred back to Corcoran until his court proceedings were complete. *Id.* at 2. He then requested that his personal property from Corcoran be sent to Mule Creek State Prison. *Id.*

His property was finally issued to him in February 2008. *Id.* at 2. He discovered that his 602s had been put in his property and had not been processed to the third level of review. *Id.* He immediately submitted his 602s to the third level. *Id.* On March 28, 2008, he received confirmation that his appeals had been screened out as untimely. *Id.* at 3.

Defendants do not dispute plaintiff's version of the facts. Nor do they explain why under these facts, where the responses to plaintiff's second-level 602 were not given to him for months so that his third-level appeal had no chance of being timely, and prison officials did not timely process his appeal to the third level of review, plaintiff should not be excused from the exhaustion requirement.

Defendants seem to argue that it is plaintiff's fault that his appeal was screened out as untimely at the third level of review, because he did not explain to the inmate appeals branch why his third-level appeal was untimely. *See* Dckt. No. 78-1 86 at 3, Dckt. No. 68-4 at 4 (excerpt of plaintiff's deposition agreeing that he never informed the Inmate Appeals Board why his third-level appeal was filed late). But defendants do not dispute plaintiff's contention that the prison's response to his second-level appeal was delayed for three months before he received

8

it, and that therefore, through no fault of his own, he was prevented from timely submitting his internal appeal to the third level. Under these facts, defendants have not met their burden of proving the affirmative defense of lack of exhaustion. Defendants are not entitled to summary judgment on the basis of lack of exhaustion.

## II.     Evidentiary Objections

Defendants object to documentary evidence plaintiff submitted with his opposition. *See* Dckt. Nos. 87, 93. Defendants have objected to three "Crime/ Incident Report[s]" and a "Medical Report of Injury or Unusual Occurrence" on Department of Corrections and Rehabilitation letterhead on the basis of lack of foundation and authentication and hearsay. *See* Dckt. No. 87, objecting to evidence at Dckt. No. 85, Exs. A-D. Defendants also object to a document titled "Separate Statement of Plaintiff's Response to Defendants['] Undisputed Material Facts," which is plaintiff's response to defendants' statement of undisputed facts; to a copy of a section of Title 15 of the California Regulations; to plaintiff's declaration; and to another CDCR "Crime/ Incident Report" on the bases of foundation, authentication, and that the documents are "not a proper subject of judicial notice." *See* Dckt. No. 93, objecting to evidence at Dckt. No. 90, Exs. A-D.

Plaintiff's evidence and defendants' objections cannot be divorced from the nature of this proceeding, i.e., summary judgment, in which defendants are the moving parties. *See Burch v. Regents of the University of California*, 433 F. Supp.2d 1110, 1118-1124 (E. D. Cal. 2006). The portion of the rule governing such a motion supported by affidavits and records provides that the affidavits "shall set forth such facts as would be admissible in evidence . . . ." Fed. R. Civ. P. 56(e). On summary judgment, the non-moving party's evidence need not be in a form that is admissible at trial. *See Burch*, 433 F. Supp.2d at 1119 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Instead, a court is concerned with the admissibility of the contents of the evidence. *Id.* Thus, on summary judgment, "objections to the *form* in which the evidence is presented are particularly misguided where, as here, they target the non-moving party's

9

evidence." *Burch*, 433 F. Supp.2d at 1119. Accordingly, as long as a party submits evidence which, regardless of its form, may be admissible at trial, it may be considered on summary judgment. *Id.* at 1120.

Defendants' objection that plaintiff's evidence lacks a proper foundation or authentication is overruled. In order to properly support or oppose summary judgment, the party relying on affidavits and records must lay a proper foundation. *Beyne v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988). The court agrees that "whether the authentication requirement should be applied to bar evidence when its authenticity is not actually disputed is, however, questionable." *Burch*, 433 F. Supp.2d at 1120. "[W]here the objecting party does not contest the authenticity of the evidence submitted, but nevertheless makes an evidentiary objection based on purely procedural grounds," then the court should consider the evidence. *Id.* In such a situation, it would appear equally probable that the documents are what they purport to be as it is that they are not. *See id.*

Here, defendants do not actually contest the authenticity of the documents plaintiff has submitted. Defendants' general objection is particularly suspect because all the documents plaintiff submits come directly from CDCR's own files. Thus, if there were a valid basis for contesting their authenticity, defendants could unearth and present it. But they have not.

Defendants also object on hearsay grounds. This objection is overruled for two reasons. The first is the form of the objection and the second is the nature of the non-moving party's burden on summary judgment. The objections are *pro forma* in that defendants object to entire documents, not particular statements. An objection based on hearsay inherently is bound to the context in which the allegedly objectionable evidence is offered. *See Burch*, 433 F. Supp.2d at 1122 ("even seemingly appropriate objections based on hearsay and failures to authenticate/lay a foundation are difficult to address away from the dynamics of trial.") Insofar as a record may on its face constitute hearsay, the particular statements upon which plaintiff relies may very well either be admissible nonetheless or may not be hearsay, depending on the purpose for which

10

plaintiff offers the statement. "The court is not inclined to comb through these documents, identify potential hearsay, and determine if an exception applies - all without guidance from the parties." *Id.* at 1124. Thus, to prevail on a hearsay objection, defendants must object to particular statements and explain the objection. Defendants' failure to do so is a sufficient basis for overruling the objection.

With respect to the nature of this proceeding, "the court cannot ignore the fact that a non-movant in a summary judgment setting is not attempting to prove its case, but instead seeks only to demonstrate that a question of fact remains for trial." *Burch*, 433 F. Supp.2d at 1121. The court thus "treat[s] the opposing party's papers more indulgently than the moving party's papers." *Id.* (*citing, Lew v. Kona Hosp.,* 754 F.2d 1420, 1423 (9th Cir. 1985)). While a court need not ignore the evidentiary ramifications of a declaration based nearly entirely on hearsay, *see Burch*, 433 F. Supp.2d at 1121 (noting that the Ninth Circuit does not uniformly apply the principle of indulgence), it is worth pointing out that plaintiff proceeds without counsel. Furthermore, he does not rely on evidence which on its face presents evidentiary obstacles which would prove insurmountable at trial. *See id.* at 1122 (noting that at trial, "when a party raises valid evidentiary objections, the opposing party will have an opportunity to present the evidence in an alternative and admissible form."). Insofar as there may be valid hearsay objections, they are better left for trial.

Defendants also object that some of plaintiff's objections are not a proper subject for judicial notice. *See* Fed. R. Evid. 201 ("A judicially noticed fact must be one not subject to reasonable dispute"). Defendants appear to make this objection in response to plaintiff's written request that "the court take judicial notice of the following enclosed exhibits." Dckt. No. 90 at 7-8. Plaintiff appears to be misusing the term of art "judicial notice," as his exhibits are not solely or even mostly composed of facts not subject to reasonable dispute, and he does not argue that the facts contained in his exhibits are "generally known" or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *See* Fed.

11

1  R. Evid. 201.  The court will not take judicial notice of plaintiff's exhibits.  However, the court
2  will consider plaintiff's exhibits as evidence in opposition to defendants' motion for summary
3  judgment.

4  Thus, defendants' objections to plaintiff's evidence submitted in opposition to this
5  motion are overruled.

## IV.    Merits

Defendants argue that they did not violate plaintiff's Eighth Amendment rights and are entitled to summary judgment on this question.  The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," and the "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Prison officials violate the eighth amendment when they apply force "maliciously and sadistically to cause harm," rather than in a good-faith effort to maintain or restore discipline.  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

Not every malevolent touch by a prison guard gives rise to a federal cause of action; the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force.  *Id.* at 9-10.  Moreover, prison guards must have the ability to use that amount force necessary to maintain or restore order within a prison.  However, guards may use force only in proportion to the need in each situation.  *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979).

In determining whether the use of force was for the purpose of maintaining or restoring discipline or, rather, for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  *Hudson*, 503 U.S. at 7.

////

Defendants have provided a "Separate Statement of Undisputed Material Facts." *See* Dckt. No. 68-2 at 1-6. Plaintiff does dispute some of the facts listed on defendants' document, but the majority of the facts are uncontested. *See* Dckt. No. 90 at 11-18 (disputing in part defendants' characterization of the facts). Except as noted, the facts discussed below are not contested.

At the time of the incident, plaintiff was on suicide watch after he had ingested thirty tablets of Ibuprofen. Defendant Miranda noticed that plaintiff was unresponsive to verbal commands. He was lying on the lower bunk. Miranda informed defendant Stephens that plaintiff was unresponsive to verbal commands. Stephens asked if the medication plaintiff had ingested earlier could cause him to be unresponsive, and Miranda responded that it could. Miranda informed Stephens that she was required to wake plaintiff every fifteen minutes because plaintiff was on suicide watch. Stephens went to the cell and called plaintiff by name, but plaintiff did not respond. He was lying down facing away from Stephens. Stephens banged on the window of plaintiff's cell, but plaintiff was still unresponsive.

Stephens decided to initiate a cell extraction. Stephens was not sure whether plaintiff's unresponsiveness was a set-up to attack officers upon entering the cell to remove him. Dckt. No. 78-4 at 3. Plaintiff's declaration states that his unresponsiveness was not a set-up, and that he was unresponsive because he was overmedicated and was incoherent. Dckt. No. 90 at 23.

Defendants assert that an emergency cell extraction "usually occurs when an inmate's presence in a cell may result in imminent loss of life, bodily injury, or threat to institutional safety and security." Dckt. No. 68-2 at 3. Stephens asked defendant Alziebler to retrieve a shield for the cell extraction. Alziebler brought the shield. Stephens ordered plaintiff to come to the cell door and submit to handcuffs or be pepper-sprayed. Plaintiff did not respond.

Stephens then sprayed a two-second burst of the pepper spray through the food port of the cell. Stephens declares that plaintiff then began to move around on his bed; Stephens ordered him twice to come to the cell door and submit to handcuffs and plaintiff did not comply;

1  Stephens told plaintiff that he would be pepper-sprayed again if he did not comply, and plaintiff
2  then complied. Dckt. No. 78-4 at 3. In contrast, plaintiff declares that he "did not immediately
3  respond to the orders given . . . [but only] responded to orders given after numerous orders
4  given." Dckt. No. 90 at 25.

5  Alziebler then put plaintiff in handcuffs, and Officer Betini put leg restraints on him.
6  Stephens declares that inmates in ad-seg are placed in leg restraints "when escorted to showers,
7  medical appointments, yards, or other places outside the cell. This procedure is followed for
8  every other inmate." Dckt. No. 78-4 at 3. Plaintiff declares that inmates do not always get put in
9  leg restraints "prior to being escorted." Dckt. No. 90 at 25.

10  Plaintiff was escorted to the shower by Alziebler and Betinis. Stephens declares that
11  plaintiff was provided cool running water to decontaminate from the pepper spray. Plaintiff
12  declares that "Defendants failed to decontaminate plaintiff by putting him in the shower and
13  taking the restraints off of plaintiff." Dckt. No. 90 at 25.

14  Defendants state that it is an undisputed fact that plaintiff did not sustain any injury from
15  exposure to the pepper spray. Dckt. No. 68-2 at 5. In contrast, plaintiff declares that he
16  sustained psychological injury and the burning from the pepper spray lasted for days. Dckt. No.
17  90 at 25.

18  Defendants argue that Stephens did not violate plaintiff's Eighth Amendment rights by
19  spraying him with a two-second burst of pepper spray. There is a genuine issue of fact as to
20  whether Stephens pepper-sprayed plaintiff maliciously and sadistically, rather than in a
21  good-faith effort to maintain discipline. Plaintiff was prone on the bunk of a suicide watch cell
22  at the time that he was sprayed. Stephens was aware from his conversation with Miranda that
23  plaintiff had been medicated and that the medication might be causing his unresponsiveness. No
24  evidence has been presented to the court that indicates that plaintiff may have been trying to set
25  up officers to attack them when they entered his cell. For example, there is no evidence that
26  plaintiff was angry, had acted violently, or had a weapon at the time of the incident. Whether

14

Stephens' conduct violated the eighth amendment cannot be resolved on summary judgment.

As to defendants Miranda and Alziebler, plaintiff contends that they violated his Eighth Amendment rights by failing to intervene and stop Stephens from pepper spraying him. Law enforcement officers "have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). In the corrections context, a prison guard has an affirmative duty to intervene on behalf of a prisoner if other officers are violating the prisoner's constitutional rights in his presence, or if he knows that the prisoner's rights are being violated. *See Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). However, correctional officers can be held liable for failing to intercede "only if they had an opportunity to intercede." *Cunningham*, 229 F.3d at 1289.

Here, plaintiff alleges that Miranda knew that he had overdosed on medication and was unresponsive. "Miranda was fully aware of the [e]ffects the medication could have on Plaintiff due to him being injected with the medication." Dckt. No. 90 at 5. "Any reasonable person would realize plaintiff['s] non-response was due to the [e]ffects of the medication." *Id.* But Miranda did not stop Stephens from pepper-spraying plaintiff. *Id.*

Plaintiff also alleges that defendant Alzeibler had knowledge of plaintiff's overmedicated condition, yet did not intervene to prevent Stephens from pepper-spraying him. Dckt. No. 90 at 5-6.

As shown above, much of the details surrounding the extraction and pepper spraying are disputed by percipient witnesses who were present. Whether plaintiff's version should be credited is for the jury at trial to determine. It is apparent that there are triable issues of fact as to whether Miranda and Alziebler's failure to prevent Stephens from pepper-spraying plaintiff was a violation of plaintiff's eighth amendment rights. Defendants have not presented evidence that Miranda and Alziebler were not present for the spraying or had no opportunity to intervene.

////

////

## V. Qualified Immunity

Defendants contend that they are entitled to qualified immunity. Qualified immunity protects government officials from liability for civil damages if a reasonable person would not have known that the conduct violated a clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). In determining whether a governmental officer is immune from suit based on the doctrine of qualified immunity, the court considers two questions: 1) do the facts alleged show the officer's conduct violated a constitutional right; and 2) was the right clearly established? *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009) (courts have discretion to decide which of the two *Saucier* prongs to address first). For purposes of evaluating defendants' assertion of qualified immunity, the court must look at the facts in the light most favorable to plaintiff. *Saucier*, 533 U.S. at 201.

Defendants, relying solely on the first *Saucier* prong, argue only that they did not violate plaintiff's Eighth Amendment rights. Defendants do not make an argument under the second *Saucier* prong. As explained above, triable issues of fact exist as to whether defendants violated plaintiff's eighth amendment rights. Accordingly, they are not entitled to summary judgment on the issue of qualified immunity.

## VI. Conclusion

Accordingly, it is hereby RECOMMENDED that defendants' motion for summary judgment be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

////

////

1 within the specified time may waive the right to appeal the District Court's order. *Turner v.*
2 *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
3 Dated: September 1, 2011.

                    EDMUND F. BRENNAN
                    UNITED STATES MAGISTRATE JUDGE